

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00479-CV

_____

ANDREA CANO, Appellant

V.

TONY HODGES AND CARTER BLOODCARE, Appellees

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-313740-19

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Andrea Cano, who sued appellees Tony Hodges and Carter BloodCare (Carter) for negligence and gross negligence[1] following a bus crash, appeals from a take-nothing judgment rendered after a bench trial. In a single issue, Cano argues that the trial court erred by rendering a take-nothing judgment in appellees' favor because they failed to provide necessary expert testimony to support their inferential-rebuttal theory that the bus crash was an unavoidable accident caused by a sudden medical emergency. We will affirm.

## II. BACKGROUND

This case concerns a one-vehicle bus crash that occurred in February 2016. At the time of the accident, the bus, which belonged to Carter, was traveling from Carter's headquarters to a Carter blood drive at a Walmart. Four Carter employees were in the bus: Hodges, Cano, Tamicka Sharp, and Yesica Alcala-Orozco. Hodges was the bus's assigned driver; Cano, Sharp, and Alcala-Orozco were passengers.

---

[1]Cano's appellate brief does not address her gross-negligence claim. Indeed, it does not even contain the words "gross negligence." Accordingly, our analysis focuses solely on Cano's negligence claim. To the extent that she seeks to challenge the trial court's denial of her gross-negligence claim, we overrule such challenge due to inadequate briefing. *See* Tex. R. App. P. 38.1; *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing).

The drive was uneventful for roughly the first hour and fifteen minutes. But around this point in the trip, Cano felt a "bump or thump" and "knew something was wrong." At first, she believed that the bus had a flat tire and would pull over, but then it began fishtailing. Sharp began yelling at Hodges to pull over and stop the bus, but he would not respond. Because Hodges was not responsive and appeared to be in a "seizure[-]like trance," Sharp and Cano attempted to stop the bus themselves by pressing buttons and attempting to reach for the brake, but these efforts were unsuccessful.[2] Eventually, Cano grabbed the steering wheel and maneuvered the bus into a grassy median where it collided with a metal wire divider before coming to a stop. During the crash, Cano suffered a broken wrist.

Immediately after the accident, an emergency medical technician (EMT) arrived on the scene. The EMT, having observed that Hodges had left facial droop and left-side weakness and numbness, told him that he had suffered a stroke.

Hodges was taken to the hospital, where he was admitted "w[ith] acute stroke." According to Hodges's medical records, the attending physician, Dr. Song, concluded that an "embolism of [Hodges's] right carotid artery" had caused him to suffer a "[c]erebrovascular accident (CVA)," which is commonly known as a stroke.[3] While

---

[2]According to Cano, Hodges pushed her away while she was trying to stop the bus.

[3]*See, e.g.*, *Blan v. Ali*, 7 S.W.3d 741, 743 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (noting that the appellant had experienced "a past cerebral vascular accident ('CVA'), commonly known as a stroke").

Hodges was at the hospital, a neurologist named Dr. Haq also examined him and told him that he had suffered a stroke.

Cano, like Hodges, was treated by medical professionals after the accident. Her medical records reflect that she told her treaters that she had been in a bus crash after the driver had gone into a "seizure[-]like trance," adding that "we think the driver was having a stroke." In her Carter employee injury report, she listed "driver blacke[d] out" as the cause of her injuries. Cano also told another treating physician that "the bus coach she was working in was involved in an accident due to the driver having an acute health issue." And during her testimony at trial, Cano acknowledged that Hodges had suffered a medical emergency on the day of the accident.

Those investigating the crash concurred that it had been caused by a medical emergency. The police accident report reflected that the cause of the accident was that the "operator [had] suffered a medical emergency." Cole Captain, who was a Carter operations coordinator at the time of the accident, testified that based on his interactions with Hodges shortly after the crash, he believed that Hodges had suffered a significant medical event because he appeared impaired, his hands were shaking, and he could not even write out his own statement about what had happened.[4] Further,

---

[4]In his report, Captain described the accident as follows:

[Hodges] stated [c]oach was bouncing as they were crossing bridge and wind was pushing the coach. Tried to slow down and get over because [Sharp] was yelling to stop the coach. The wind and bouncing pushed

4

Terrie Henderson, Carter's Director of Human Resources, testified that based on her review of statements gathered by Captain, she had concluded that an unpreventable medical incident—Hodges's stroke—had caused the crash.

Ultimately, Cano sued Hodges and Carter for negligence and gross negligence based on the bus crash.[5] Hodges and Carter filed an answer in which they generally denied Cano's claims and asserted, as an inferential-rebuttal theory, that Hodges's stroke "immediately prior to the accident in question caused a sudden emergency and an unavoidable accident." Following a bench trial, the trial court signed a take-nothing judgment in favor of Hodges and Carter. Cano filed a motion for new trial, which was overruled by operation of law. She also requested findings of fact and conclusions of law, but the trial court never issued any, and Cano did not file a past-due notice. *See* Tex. R. Civ. P. 296, 297. This appeal followed.

---

[the] coach into the rail. [Cano] came to the front and got on [Hodges's] lap to help get control and stop the coach. EMS was called.

Thus, in his initial statements to Captain, Hodges claimed that high winds had caused the crash; he did not mention a stroke. At trial, Hodges testified that he did not remember speaking with Captain after the crash and that he did not recognize his signature on the accident report. He also testified that he did not remember "any wind blowing or pushing the coach" at the time of the crash.

[5]Cano originally named Sharp as a defendant as well, but she later nonsuited her claims against her.

## III. DISCUSSION

In a single issue, Cano argues that the trial court erred by rendering a take-nothing judgment in appellees' favor because they failed to provide necessary expert testimony to support their inferential-rebuttal theory that the bus crash was an unavoidable accident[6] caused by Hodges's stroke. Thus, in effect, she contends that the judgment should be reversed because the evidence is legally insufficient to support the trial court's implied finding that appellees proved the necessary elements of their unavoidable-accident theory. *See City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005) ("When expert testimony is required, lay evidence . . . is legally insufficient."). We disagree.

---

[6]As noted, appellees pleaded that "immediately prior to the accident in question" Hodges suffered an "unexpected condition" that "caused a sudden emergency and an unavoidable accident." Cano incorrectly asserts that an unavoidable-accident theory cannot be based on a driver's incapacity and therefore focuses her argument on whether the evidence was legally sufficient to support the elements of sudden emergency. *See Frazier v. Roden*, No. 2-09-017-CV, 2009 WL 3416507, at *2 (Tex. App.—Fort Worth Oct. 22, 2009, no pet.) (mem. op.) (enumerating elements). But the doctrine of unavoidable accident subsumes the doctrine of sudden emergency. *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995). And courts have held that unavoidable accident applies to situations in which a driver's sudden loss of consciousness causes an accident. *See Williams v. Parker*, 472 S.W.3d 467, 470 (Tex. App.—Waco 2015, no pet.); *First City Nat'l Bank of Hous. v. Japhet*, 390 S.W.2d 70, 74–75 (Tex. App.—Houston 1965, writ dism'd). Because unavoidable accident applies to the situation presented here and because the elements of this broader doctrine better fit this case's fact pattern than those of the narrower sudden-emergency doctrine, we analyze the sufficiency of the evidence in relation to the unavoidable-accident elements rather than the *Frazier* factors.

## A. Standard of Review

In a bench trial in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it.[7] *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When a party challenges the legal sufficiency of the evidence to support an implied finding regarding an issue on which the party did not have the burden of proof, it must demonstrate on appeal that no evidence supports the implied finding.[8] *See Johnson v. Kindred*, 285 S.W.3d 895, 898 (Tex. App.—Dallas 2009, no pet.) (op. on reh'g) (citing *Maximum Med. Improvement, Inc. v. County of Dallas*, 272 S.W.3d 832, 836 (Tex. App.—Dallas 2008, no pet.)).

We must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). "If an

---

[7]As noted, Cano requested findings of fact and conclusions of law, but the trial court never issued any, and Cano never filed a past-due notice as required by Rule 297. *See* Tex. R. Civ. P. 297. In such a scenario, "it is as if no initial request [for findings of fact and conclusions of law] was made." *Song v. Kang*, No. 02-18-00375-CV, 2020 WL 1808487, at *9 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.) (quoting *In re A.I.G.*, 135 S.W.3d 687, 694 (Tex. App.—San Antonio 2003, no pet.)).

[8]Although a party relying on an inferential-rebuttal theory has the burden to produce evidence to support it, "the burden of persuasion on the issue . . . is upon the [plaintiff]." *Gillespie v. Wesson*, 370 S.W.2d 918, 921 (Tex. App.—Fort Worth 1963), *rev'd on other grounds*, 382 S.W.2d 921 (Tex. 1964); *see City of Houston v. Gonzales*, 682 S.W.3d 921, 930 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (op. on reh'g) (explaining that party relying on inferential-rebuttal theory bears the burden of producing sufficient evidence to prove it (citing *City of Houston v. McGriff*, 695 S.W.3d 377, 388 (Tex. App.—Houston [1st Dist.] 2022, no pet.))).

7

independent ground would fully support the complained-of . . . judgment, but the appellant assigns no error to that independent ground, we must accept the validity of that unchallenged independent ground, and any error in the grounds challenged on appeal is harmless." *Thomas v. Pugliese*, No. 02-18-00064-CV, 2019 WL 3024473, at *5 (Tex. App.—Fort Worth July 11, 2019, no pet.) (mem. op.) (citing *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.)).

If an implied finding is unchallenged by complaint on appeal, it is binding upon the appellate court unless the contrary has been established as a matter of law or the record contains no evidence to support the finding. *Toles v. Toles*, 45 S.W.3d 252, 265 n.6 (Tex. App.—Dallas 2001, pet. denied) (first citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); and then citing *Osuna v. Quintana*, 993 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1999, no pet.)). If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then we may not substitute our judgment for that of the factfinder. *Graham v. Compton*, No. 05-20-01013-CV, 2022 WL 1467921, at *1 (Tex. App.—Dallas May 10, 2022, no pet.) (mem. op.) (citing *Am. Express Centurion Bank v. Minckler*, 345 S.W.3d 204, 207–08 (Tex. App.—Dallas 2011, no pet.)). We must consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it, but if the evidence allows only one inference, neither the factfinder nor the reviewing court may disregard it. *Id.* (citing *Am. Express Centurion Bank*, 345 S.W.3d at 208).

**B. The Judgment Is Supported by Unchallenged Independent Grounds**

Cano's only complaint on appeal challenges the trial court's implied finding that the bus crash was an unavoidable accident caused by Hodges's stroke. But the appellees' unavoidable-accident inferential rebuttal is not the only legal theory supporting the trial court's take-nothing judgment. Because the appellees pleaded a general denial, Cano was required to prove all the elements of her negligence claim. *See Trevino v. Am. Nat'l Ins. Co.*, 168 S.W.2d 656, 659 (Tex. [Comm'n App.] 1943)). And even setting aside the appellees' inferential-rebuttal theory, the trial court could have reasonably found that Cano failed to prove all the required elements.

Under Texas law, the elements of a negligence claim are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Elephant Ins. Co., LLC., v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). "To establish proximate cause, it is a plaintiff's burden to prove two elements, cause-in-fact and foreseeability. Cause-in-fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.) (citations omitted).

Here, even if we were to assume that the evidence is legally insufficient to support appellees' unavoidable-accident theory, the record nevertheless supports the implied finding that Cano failed to satisfy her burden to prove that appellees' negligence proximately caused her injuries. Cano acknowledged that it was she—not

9

Hodges—who steered the bus into the median, causing the accident. While Cano's actions were reasonable—and may even be considered heroic—under the circumstances, that is beside the point. Because the undisputed evidence shows that Cano left her seat and steered the bus into the median, the trial court could have reasonably found that her injuries were caused by her own actions—not any negligence on appellees' part. If Cano had not taken matters into her own hands, the bus might not have crashed, and even if a similar crash had occurred, Cano might not have been seriously injured. Indeed, Alcala-Orozco, who—unlike Cano—remained seated with her seatbelt fastened, sustained only minor injuries. Thus, considering the evidence in the light most favorable to the implied finding, we cannot conclude that Cano proved as a matter of law that the appellees' negligence caused her injuries. *See Toles*, 45 S.W.3d at 265 n.6; *see also Graham*, 2022 WL 1467921, at *1.

Because Cano does not challenge the trial court's implied finding that she failed to satisfy her burden to prove that appellees' negligence proximately caused her injuries and because the evidence does not establish the contrary as a matter of law, we are bound by this finding. *See Toles*, 45 S.W.3d at 265 n.6. Further, because proximate cause is an essential element of Cano's negligence claim, *see Elephant Ins.*, 644 S.W.3d at 144, this implied finding fully supports the trial court's take-nothing judgment. Accordingly, Cano has failed to demonstrate harmful error, and we must affirm the trial court's judgment. *See Thomas*, 2019 WL 3024473, at *5; *S.W. ex rel.*

10

*A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 419 (Tex. App.—Fort Worth 2014, no pet.).

Although we could end our analysis here, we will nevertheless address Cano's sole appellate issue in the interests of completeness and clarity. *See Gray v. River Run Prop. Owners Ass'n, Inc.*, No. 02-24-00224-CV, 2025 WL 421219, at *5 (Tex. App.—Fort Worth Feb. 6, 2025, pet. filed) (mem. op.); *In re County of Hidalgo*, 655 S.W.3d 44, 52 (Tex. App.—Corpus Christi–Edinburg 2022, orig. proceeding); *Carr v. Jaffe Aircraft Corp.*, 884 S.W.2d 797, 803 (Tex. App.—San Antonio 1994, no writ); *see also In re Estate of Tovar*, No. 08-22-00028-CV, 2023 WL 2373496, at *4 (Tex. App.—El Paso Mar. 6, 2023, pet. denied) (mem. op.) ("In the interest of completeness, we address the last portion of [appellant's] argument on this issue."); *cf. Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible.").

## C. Sufficient Evidence Supports Appellees' Unavoidable-Accident Theory

Appellees pleaded that the bus crash was an unavoidable accident caused by Hodges's stroke. Unavoidable accident is an inferential-rebuttal theory. *See Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 432 (Tex. 2005). Such a theory operates to rebut an essential element of a plaintiff's case by proof of other facts. *See McGriff*, 695 S.W.3d at 388.

An unavoidable accident is "an event not proximately caused by the negligence of any party to it." *Reinhart*, 906 S.W.2d at 472. In other words, it is an accident "that

11

ordinary care and diligence could *not* have prevented, or one which could not have been foreseen or prevented by the exercise of reasonable precautions." *Otis Elevator Co. v. Shows*, 822 S.W.2d 59, 63 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Under this doctrine, "unforeseen loss of consciousness is a complete defense to the claim that a driver negligently caused a motor-vehicle accident." *Luna v. Capehart*, No. 10-17-00377-CV, 2019 WL 2479969, at *3 (Tex. App.—Waco June 12, 2019, no pet.) (mem. op.) (citing *Japhet*, 390 S.W.2d at 75). Thus, when a plaintiff asserts a negligence claim against a driver based on a vehicle crash, the driver can defeat the plaintiff's claim by showing that (1) he was incapacitated before the collision, (2) the incapacity caused the collision, and (3) his incapacitation was not foreseeable. *See Williams*, 472 S.W.3d at 470 (quoting *Piatt v. Welch*, 974 S.W.2d 786, 788 (Tex. App.—El Paso 1998, no pet.)).

Here, the evidence, when viewed in the light most favorable to the judgment, supports an implied finding that the crash was an unavoidable accident.

Regarding the first two elements, Cano contends that the evidence is legally insufficient because appellees offered no expert testimony to show when Hodges's stroke occurred.[9] According to Cano, appellees showed that Hodges suffered a stroke

---

[9]Cano cites *Gómez v. Cooke*, No. 14-15-00010-CV, 2016 WL 836781, at *3 (Tex. App.—Houston [14th Dist.] Mar. 3, 2016, no pet.) (mem. op.), and *Luna*, 2019 WL 2479969, at *3–5, for the proposition that appellees were required to offer expert testimony to support their unavoidable-accident theory. But these cases impose no such requirement. In *Gómez*, the court of appeals held that a driver had "conclusively established" that his unforeseeable stroke had caused the accident in question and

12

but presented no evidence showing that the stroke occurred before, much less caused, the crash. We disagree.

The record reflects that Hodges felt and appeared fine on the morning of the accident and that he drove without incident for roughly the first hour and fifteen minutes of the trip. Indeed, Cano herself testified that Hodges did not look like he had suffered a stroke when she talked to him before the drive started. But she recalled that during the middle of the drive, Hodges began to behave as though he was in a "seizure[-]like trance" and became unresponsive to anything said to him. She stated that she did not believe that Hodges had taken his eyes off the road or had had a similar momentary lapse of judgment or that he had intentionally tried to wreck the bus. And she listed "driver blacke[d] out" as the cause of her injuries in her employee

---

therefore affirmed a take-nothing summary judgment in the driver's favor. 2016 WL 836781, at *2–4. In rejecting the appellant's argument that the driver was required to independently research his hypertension to determine whether he was at risk of suffering a stroke, the court noted that "the effect and foreseeable course of a medical condition is a matter for experts," but it never stated that sworn expert testimony was the *only* way to prove that an accident was unavoidable due to a medical emergency. *See id.* at *3. In *Luna*, the Waco court of appeals reversed a take-nothing summary judgment in a driver's favor on the grounds that she had failed to conclusively establish her unavoidable-accident theory because her medical records did not state that she had suffered a "syncopal episode" as she claimed, the summary-judgment record contained no expert testimony regarding the syncopal episode, and she had admitted that "no physician could substantiate the condition she claim[ed] she had just prior to the collision." 2019 WL 2479969, at *3–5. But as in *Gómez,* the *Luna* court never stated that expert testimony was the *only* way to prove an unavoidable-accident inferential rebuttal. *See id.* Further, *Luna* is distinguishable because unlike the driver's medical records in that case, Hodges's medical records clearly state that he suffered a stroke.

13

injury report and told her treating physician that "the bus coach she was working in was involved in an accident due to the driver having an acute health issue."

When combined with the medical records reflecting that Hodges suffered a stroke, the above-outlined uncontroverted evidence describing Hodges's behavior and the sequence of events leading up to the crash supports an inference that Hodges became incapacitated shortly before the accident and that his incapacity caused the crash.[10] *See Guevara v. Ferrer*, 247 S.W.3d 662, 666 (Tex. 2007) (recognizing that "generally, lay testimony establishing a sequence of events [that] provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation" (quoting *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984))); *see also Barras v. Barras*, 396 S.W.3d 154, 170 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("When reviewing a legal sufficiency, or no evidence, challenge [to an implied finding], we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it." (citing *Harrison v. Harrison*, 321 S.W.3d 899, 901 (Tex. App.—Houston [14th Dist.]

---

[10]In her reply brief, Cano asserts that by asking us to "infer backward from a post-crash stroke diagnosis to a pre-crash cause," appellees' argument reflects the post hoc ergo propter hoc logical fallacy that the supreme court has cautioned against. *See Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). And if appellees had relied solely on the evidence of Hodges's post-crash stroke diagnosis, she might be correct. However, as noted above, the record contains other uncontroverted evidence regarding Hodges's appearance and behavior on the morning of the accident and the sequence of events leading up to the crash. Because this evidence provided a strong, traceable connection between Hodges's stroke and the crash, appellees' argument avoids the post hoc ergo propter hoc fallacy. *See Guevara*, 247 S.W.3d at 666.

14

2010, no pet.))). Thus, even though appellees did not offer any expert testimony regarding exactly when Hodges's stroke occurred, the record contains sufficient evidence to support the first two elements of their unavoidable-accident theory. *See Guevara*, 247 S.W.3d at 666.

Regarding the third element—foreseeability—Cano argues that Hodges's stroke was foreseeable because he knew that he had high blood pressure and had been informed by his doctor that a stroke was one of the risks associated with this condition. But the mere fact that Cano had high blood pressure does not conclusively prove that his stroke was foreseeable, and the record contains substantial evidence to the contrary. *See Gómez*, 2016 WL 836781, at *2–4 (holding that driver had "conclusively established" that his stroke was unforeseeable even though he had had high blood pressure for at least ten years before the accident because he appeared healthy and had no symptoms suggesting that he should not drive on the day of the accident and because he had never been told that he was at risk of having a stroke).

Hodges felt and appeared fine before the drive started,[11] and he drove for roughly an hour and fifteen minutes without incident. Further, six months before the accident, Hodges had applied for a commercial driver's license (CDL), and as part of that process, a health care professional had examined him and had certified that he

---

[11]Cano noted that Hodges had told Sharp that he felt tired before starting the drive, but Hodges testified that this was not out of the ordinary because he "was always tired." Further, nothing in the record suggests that tiredness is predictive of a stroke.

was medically qualified to drive a commercial motor vehicle. Hodges testified that he had disclosed to the medical professional all of his medical conditions—including his high blood pressure—and the medications that he was taking—including Lisinopril, which treats high blood pressure. Even with full knowledge of Hodges's condition, the medical professional nevertheless determined that he was medically qualified to drive the bus.[12] Because the record contains more than a scintilla of evidence to support the implied finding that Hodges's stroke was unforeseeable, Cano's no-evidence challenge fails. *See Johnson*, 285 S.W.3d at 898; *see also Wynn v. Silver Oaks Apts., Ltd.*, No. 04-12-00727-CV, 2014 WL 60657, at *1 (Tex. App.—San Antonio Jan. 8, 2014, no pet.) (mem. op.) ("If there is more than a scintilla of evidence to support the [implied] finding, the no-evidence challenge fails." (first citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); and then citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992))).

Having concluded that the record contains sufficient evidence to support the trial court's implied finding that the bus crash was an unavoidable accident, we overrule Cano's sole issue.

---

[12]At trial, appellees showed that the applicable Department of Transportation regulation does not disqualify a CDL driver with high blood pressure as long as the driver's medical diagnosis does not indicate that his high blood pressure interferes with his ability to drive. *See* 49 C.F.R. § 391.41; 49 C.F.R. Pt. 391, App. A. The trial court took judicial notice of this regulation.

## IV. CONCLUSION

Having determined that Cano failed to challenge all independent grounds for the judgment below and having overruled her sole appellate issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  August 14, 2025